Brinkerhobb1, J.
The case has been elaborately argued orally, and in written and printed briefs ; and, as was to be expected, from the complicated transactions and relations of the parties, and the numerous exceptions filed to the report of the referee, a great number and variety of questions have been urged upon our consideration.
Moreau & Scudder were made parties defendant after the case had been appealed to the district court; and we think this was properly done, under the ruling in Grant v. Ludlow, 8 Ohio St. Rep. 1.
They file their answer in the case in the nature of a cross-bill, and they, in conjunction with the plaintiffs, Babcock & Co., contest the legal validity of the trust deed, and of the sale made under color of its provisions.
All the other defendants claim title, mediately or immediately, under the trust deed, or under sales made ostensibly under its provisions; and around these points the contest is principally concentrated; and very naturally so — for, if the *34 trust deed, and the sales made under color of its provisions, were valid and regular; or if the plaintiffs and Moreau & Seudder occupy such a position that they are not now at liberty to contest either the validity of the trust deed or of the sales made ostensibly under it, then, in as much as Moreau & Scudder claim under a mortgage, and the plaintiffs under a conveyance, both made subsequent to the deed of trust. and subject to the rights which it conferred, it is obvious that their claims are cut off, must fall to the ground, and the petition be dismissed.
This trust deed, it will be observed, was in the nature of a mortgage, given as a security for money loaned; and by its terms conferred on the lender and grantee a power of sale, without appraisement, on default being made in the repayment of the loan. And if, in order to decide this case, it were necessary for us to pass definitely upon the question of the validity of a sale made in pursuance cf the terms of such an instrument, it would become a subject of serious and perhaps doubtful inquiry, whether, in view of the long-established policy of our laws forbidding the sale of lands pledged by way of mortgage for less than two thirds of their appraised value, such a sale could be upheld. But, in our view of the case, it is not necessary to pass upon that question — and we avoid the expression of any opinion upon it — because, whether the sale under the deed of trust were valid or invalid, we are of opinion that the only parties interested in questioning the validity of that sale, to-wit, the plaintiffs, and Graham & Belden, and Moreau & Scudder, are concluded by the proceedings and decree in • the King suit, and are not now at liberty to call the validity of that sale in question.
All the parties now here seelcing to annul the sale under, the deed of trust, were parties to the King suit. The leading objects of that suit, on the part of King, were to enforce his vendor’s lien on the distillery property; and, in as much as his vendor’s lien on that property was subsequent and subject to the lien of the Ward and McCartney mortgages on the same property — and which mortgages, as well as the trust *35 deed for the Oxford lands, were owned and held by Barnes & Gibbs, or Camp — all of whom were also parties to the King suit, to compel Barnes & Gibbs to exhaust the Oxford lands, on which they had an exclusive lien, and to apply their proceeds to the discharge of the amount due them, before resorting to the distillery property, on which he, King, had a subsequent lien. These objects King, by the decree of the court in his case, accomplished. The proceeds of the sale of the Oxford lands were first applied toward the extinguishment of the indebtedness of Graham & Belden to Barnes & Gibbs; and Graham & Belden, in whose shoes the plaintiffs stand, had the benefit of-such application, in the reduction of the amount of their indebtedness; and Moreau & Scudder, as purchasers of the distillery property subject to the prior liens of Barnes & Gibbs, and King, also had the benefit of such application of the proceeds of the sale of the Oxford lands, by having decreed to them, and receiving, the surplus of the proceeds of the sale of the distillery property remaining after the discharge of King’s vendor’s lien. It seems to us that the validity of the sale of the Oxford lands was necessarily in issue in the King suit; that the master in taking and stating an account between the parties in that suit must necessarily, in fact or in effect, pass upon the validity of that sale; for if valid, the proceeds of that sale ought to have been, as they were, allówed; if invalid, they ought not to have been allowed; the proper parties were all before the court; and if Graham & Belden, or Moreau & Scudder, desired or intended to contest the validity of the sale under the deed of trust, then and there was the proper forum for that contest; that having received the benefit of the proceeds of the sale of the Oxford lands there, they are precluded from contesting its validity here; and that, if the benefits arising from the application of the proceeds of that sale were, by the decree of the court in that case, forced upon them against their wish and will, their proper remedy was to be found in a proceeding in error to reverse or modify the decree of the court in that case, and not in an original and independent proceeding. “ The judgment of a court of *36 competent jurisdiction upon a question.directly involved in the suit, is conclusive in a second suit between the same parties, depending on the same question, although the subject matter of the second action be different.” Doty v. Brown, 4 Comstock, 71. And in respect to this quality of conclusive effect upon parties and privies, the decrees of courts of chancery, upon matters within their jurisdiction, stand upon the same footing with judgments at law. 2 Smith’s Leading Cases, Hare & Wallace’s ed. 593. “A decree in chancery may be given in evidence between the same parties, or any claiming under them; for their judgments must be of authority in those cases where the law gives them a jurisdiction; for it were absurd that the law should give them a jurisdiction, and yet not suffer what is done by force of that jurisdiction to be full proof.” Buller’s N. P. 243.
This view of the case is, by counsel in argument, strenuously contested, on the ground that the.validity of the sale of the Oxford lands under the deed of trust was not put in issue by the pleadings in the King suit.
It is undoubtedly a general rule, that, in order to make a judgment at law conclusive between the same parties or their privies in a subsequent suit, the matter attempted to be disputed in the subsequent suit must have been put in issue by the pleadings in the first. This general rule, however, is subject, in particular cases, to important modifications, even in respect' to judgments at law. Accordingly, in Wood v. Jackson, 8 Wend. 10, it was held, that “ a former judgment may be given in evidence, accompanied by such parol proof as is necessary to show the grounds upon which it proceeded, where such grounds, from the form of the issue, do not appear from the record itself, provided that the matters alleged to have been passed upon be such as might have been legitimately given in evidence under the issue joined; and such that, when proved to have been given in evidence,- it is manifest by the verdict and judgment, that they must have been directly and necessarily in question, and passed upon by the jury.” Thus, the general rule is subject to an important qualification, even in cases at law, where the authorized form of pleading is such *37 as not to show the ground on which the judgment, relied on as an estoppel, proceeded.
The King suit was a suit in chancery, between numerous parties, involving an account between them embracing many and complicated transactions and claims ; it was not desirable, and was scarcely possible, that all the claims of the parties, in respect to the various items necessary to be passed upon and adjudicated in settling an account between them, should be made matter of distinct averment in the pleadings.
It was the policy of proceedings strictly in the course of the common law, to narrow the issues to a few distinct points of contest; and hence there was, as to them, reason in the rule contended for by the plaintiffs’ counsel; but it seems to us, that, as to a proceeding in chancery, involving numerous items and complicated matters of account between many and variously related parties, and where many of the claims of the parties respectively must be made and contested orally before the master, and on argument of exceptions to his conclusions, the reason of the rule fails, and the rule itself can have no proper application. And the parties representing all the interests and titles claimed here being before the court there, and a final account between them, growing out of their re spective titles to, and liens upon; the • Oxford lands and the distillery property and the proceeds of both, being the leading object and purpose of that litigation, we can not but think that the validity of the sale of the Oxford lands must be regarded as a matter necessarily in issue between them in the framing of that account, and the decree of the district court affirming the account stated by the mastfj must be held to be conclusive. Certainly it was competent tor Graham & Belden — in whose shoes the plaintiffs stand — and for Moreau & Seudder, the mortgagees of Graham & Belden, to have contested in the King suit, the validity of the sale under the trust deed; they had the same interest in making such a contest then that they have now — unless, indeed, they were willing to take the benefit of the proceeds of that sale first and te contest it afterward — which surely can not be permitted— and either failing to make the contest there, or acquiescing, *38 without a resort to a proceeding in error, in a decision adverse to their interests and claims, they can not be permitted to assert them now. The public good requires that there should be some end to-litigation.
. This view of the case rendered it unnecessary to decide any of the numerous other questions which would have arisen in the case, had n,ot the plaintiffs and Moreau & Scudder been concluded by the King suit.
The exception to the referee’s third conclusion of law is sustained, and the petition will be dismissed.
Scott, G.J., and Sutliee, Peck, and Gholson, JJ., concurred.